# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 18, 2015 Session

## ROBERT GEORGE RUSSELL, JR. v. CITY OF KNOXVILLE ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 186936-2    Daryl R. Fansler, Chancellor**

---

### No. E2014-01806-COA-R3-CV-FILED-SEPTEMBER 24, 2015

---

Robert George Russell, Jr., a Knoxville Fire Department captain, brought this action challenging the decision of Fire Chief Stan Sharp to promote others to the position of assistant fire chief. In 2013, Chief Sharp selected three fire officers to fill vacancies in the position of assistant chief. Russell filed an employment grievance with the Civil Service Merit Board (the CSMB or the Board), alleging that, in making his selections, Chief Sharp violated the applicable rules and regulations when he used, among other things, a mathematical formula that had not been approved by the Board. Russell also asserted that Chief Sharp violated the rules by not considering his ranking, according to the eligibility roster listing of the candidates eligible for promotion. The Board's administrative hearing officer denied the grievance, and the trial court affirmed. We hold that Chief Sharp did not violate the Board's rules and regulations and did not act arbitrarily or capriciously in exercising his discretion to make promotions. We affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Wendell K. Hall, Knoxville, Tennessee, for the appellant, Robert George Russell, Jr.

Alyson A. Eberting, Knoxville, Tennessee, for the appellees, City of Knoxville and City of Knoxville Civil Service Merit Board.

1

# OPINION

## I.

In 2013, the fire department had three vacancies in the position of assistant fire chief. In accordance with its rules and regulations, the Board provided Chief Sharp with an applicant referral form and selection report, also referred to as the eligibility roster, ranking the names of all the candidates who were qualified under the rules. Eleven fire officers were on the list. Russell was ranked highest. Chief Sharp, in his affidavit, addressed his methodology and evaluation in promoting candidates to the position of assistant fire chief:

> After receiving the Eligibility Register with the list of eleven (11) people who were eligible to be promoted, I asked each Assistant Chief and the Deputy Chief to recommend three people from the list, ranking them 1, 2 or 3. A blank packet of what was provided to each Chief is attached as Exhibit B to this Affidavit.
>
> If a candidate was ranked "1," they received 3 points, if they were ranked "2," they received 2 points, and if they were ranked "3," they received 1 point. (No ranking meant the candidate received 0 points). The points for each candidate were added together to obtain the Rating Sheet Score, which was then placed on a curve for a Rating Sheet % score.
>
> I then calculated a Final Recommendation Score for each candidate based on the Rating Sheet Score and the total number of recommendations each candidate received.
>
> In addition to receiving recommendations, Deputy Chief Roger Byrd and I interviewed each applicant listed on the Eligibility Register. Each applicant was asked the same ten (10) questions. Each candidate had the possibility of achieving a total possible score of 80 points for the interview.
>
> The Final Recommendation Score and Final Interview Score were averaged to compile a Final Score. The top four candidate's scores are listed on Exhibit C to this Affidavit. Mr. Russell ranked number 4.

2

In addition to the mathematical calculation, which was just one tool I used in making my decision, I also considered my own personal knowledge of the candidates, their personnel files, disciplinary records, and their resumes.

I met with Civil Service Director Hatfield on more than one occasion to discuss the promotion process and was advised that, so long as I conducted the required structured interview, my selection procedure after receiving the Eligibility Register was at my discretion.

(Numbering and some references to exhibits in original omitted.) Russell was not among the three candidates promoted.

As previously noted, Russell filed an employment grievance with the CSMB on August 15, 2013, and this matter proceeded before the Board's administrative hearing officer. Each side filed a motion for summary judgment. The administrative hearing officer found and held in pertinent part as follows:

On or about November 25, 2013, the City filed a Motion to Strike certain exhibits submitted by the Grievant in support of his Motion for Summary Judgment. No response to the Motion to Strike having been filed by the Grievant and the same being well-taken, the Motion to Strike filed by the City is GRANTED. . . .The following exhibits to the Grievant's Motion for Summary Judgment are not relevant in determining the foregoing stipulated issues for reasons discussed at length hereinafter: Exhibit B (resume Robert Russell), Exhibit G (deposition testimony of Chief Stanley K. Sharp) Exhibit J (deposition testimony of Assistant Chief Victor Lawson), Exhibit K (deposition testimony of Assistant Chief Mark Morris) and Exhibit L (deposition testimony of Assistant Chief Gary Scott Compton).

For the record, admission of the foregoing exhibits would not have altered the finding[s] of fact and conclusions of law as set forth hereinafter. Further, all section references as hereinafter cited a[re] to the Knoxville Civil Service Merit Board Rules and Regulations.

\*     \*     \*

3

[I]t is undisputed that Chief Stan Sharp . . . did not consider Mr. Russell's ranking on the Eligibility Register in deciding not to promote him to Assistant Fire Chief in August of 2013. Robert Russell was ranked number one on the 2013 Eligibility Register, but was passed over for promotion with Chief Sharp selecting for promotion three other applicants from the Eligibility Register with lower rankings.

As part of the promotional process, all applicants on the Eligibility Register were interviewed and asked the same questions by Chief Sharp and Deputy Chief Roger Byrd. Chief Sharp provided the list of eligible applicants and their resumes to his Assistant Chiefs and his Deputy Chief for recommendations in determining who to promote. Chief Sharp developed a mathematical formula he relied on in scoring the recommendations and interviews for promotional determination. Chief Sharp reviewed personnel files, disciplinary records, and the recommendations of various Assistant Chiefs and the Deputy Chief, in addition to using a mathematical formula to determine who he believed were the best applicants for promotion. Chief Sharp did not obtain the approval of the [CSMB] for his mathematical formula.

The City in its Motion for Summary Judgment argues that final promotional decisions are within the discretion of the department head and that ranking does not create a promotional preference. In his Motion for Summary Judgment and supporting Statement of Material Facts the Grievant does not dispute the City's position, but argues that ranking is an objective criterion which cannot be eliminated from the selection process because promotional decisions under Knoxville Civil Service Rules are required to be based on merit. Grievant argues that the removal of ranking creates a subjective selection process for promotion as opposed to a merit based process. Mr. Russell takes the position that Chief Sharp cannot, without approval of the [CSMB], independently implement a promotional selection procedure which ignores Eligibility Register ranking and incorporates a mathematical formula of his own creation based on the

4

interview and/or recommendation scores of other assistant chiefs.

Mr. Russell is understandably disappointed and frustrated that he was passed over for promotion after ranking first on the Eligibility Register. However [CSMB] Rules and Regulations do not support his legal posture that Eligibility Register ranking is a required merit promotional factor; or, that Chief Sharp's mathematical promotional formula required Board approval. Section 1003 provides that: "because selection matters are discretionary in nature, successful test results and the meeting of all eligibility requirements do not in any way guarantee the selection of an applicant." Section 1003 specifically states that "eligibility for selection" and "actual selection" are separate and distinct matters.

Section 1503 states unequivocally that "rank order on the referral does not in any way guarantee that an individual will be hired" and that "[r]anking on the referral only means that all individuals above the individual selected are guaranteed an interview, but not that such individuals have any preference in the selection process." Since ranking provides no basis for promotional preference under the express provisions of the [CSMB] Rules and Regulations, Chief Sharp's failure to consider ranking in his mathematical formula does not violate the same; nor, does his use of a mathematical formula, without [CSMB] Approval, violate Knoxville Civil Service Rules and Regulations.

Section 1503 expressly provides that "hiring decisions are at the discretion of the Department Head." As to the application of ranking in the exercise of this discretion, Section 1503 only requires the Department Head to interview any applicant ranked higher on the Eligibility Register than an applicant selected for promotion providing detailed justifications for such selection. It is undisputed that Chief Sharp interviewed all the applicants on the Eligibility Register, including the Grievant; and, filed the requisite statements justifying his hire of individuals ranked lower than the Grievant on the Eligibility Register. [ ]Having met the interview requirements

5

of 1503 in which ranking had no promotional bearing, Chief Sharp . . . did not violate civil service rules and regulations by utilizing a mathematical formula in exercising his promotional prerogatives.

While Grievant correctly argues that promotions are to be based on merit, the consideration of eligibility ranking beyond the exam is not required under [CSMB] Rules and Regulations. Section 1005 provides that "[p]romotions shall be made by appointing officers on the basis of merit, within rules prescribed by the civil service merit board." Section 2102 does in fact state that "[i]n accordance with Section 1005 of the Charter, promotion shall be based on 'merit' to be ascertained so far as practical by competitive evaluation, as set forth in the Board Rules and Regulations." Despite Grievant's assertions, however, these provisions do not conflict with, change, alter or override the express provisions of Sections 1003 and 1503 mandating that promotional decisions are discretionary with the department head who is not bound by eligibility ranking. [CSMB] Rules and Regulations specifically do not require consideration of ranking for promotion beyond the Eligibility Register and that promotion decisions are discretionary with the department head. Therefore, Chief Sharp's failure to take into consideration Mr. Russell's ranking in making his promotional determinations is not in violation of Knoxville [CSMB] Rules and Regulations.

Since promotional decisions are discretionary under the express provisions of Sections 1003 and 1503, Chief Sharp was not required under Section 2102.3 of the Knoxville [CSMB] Rules and Regulations to obtain Board approval of his promotional discretionary mathematical formula as argued by the Grievant. Section 2102.3 does provide that "[t]he Executive Secretary/Director in consultation with the Department Head, subject to the approval of the Board, shall determine the method of selection and shall use one or more of the selection procedures and the certification process when filling a vacancy by promotion as described in these rules." However, Grievant's argument defining the "selection procedure" referenced in Section 2102.3 to include Chief

6

Sharp's mathematical formula is not in keeping with the express promotional requirements of the Knoxville [CSMB] Rules and Regulations; specifically, but without limitation Section 2109 of the Knoxville [CSMB] Rules and Regulations setting forth the PROMOTIONAL PLAN FOR THE KNOXVILLE FIRE DEPARTMENT.

Chief Sharp did not select the applicant pool of qualified individuals eligible for promotion, but merely promoted from within the Eligibility Register as contemplated and required by the promotional process of Section 2109. Section 2109.3 specifically enumerates the selection procedure components of the selection process which result in the establishment of an Eligibility Register for promotional vacancies from which the department head makes promotional hires. This eligibility selection procedure requires an oral interview and written examination which [h]as occurred in the present case.

Once the Eligibility Register is established, then the promotional decision from the Eligibility Register is a matter of discretion by the department head under Sections 1003 and [1503]. It is not necessary to rely on Affidavit testimony or opinion [of] Vicki Hatfield as Executive Director of the Civil Service Board in making this determination. Grievant's arguments that the term "selection procedure" in Section 2102.3 requires consideration of ranking and [CSMB] approval of Chief Sharp's mathematical formula in the exercise of his discretion to promote from the Eligibility Register, are directly contrary to the express provisions and overall statutory scheme of the [CSMB] Rules and Regulations; and, therefore, cannot be supported as a matter of law. The express language of the Sections 1003 and [1503] of the [CSMB] Rules and regulations unambiguously provide that successful test results and the meeting of all eligibility requirements do not in any way guarantee the selection of an applicant and that hiring decisions are within the discretion of the department head.

. . . [T]here being no factual or legal dispute between the parties that the Grievant's number one ranking on the Eligibility Register, while guaranteeing him an interview, did

not guarantee him promotion under the [CSMB] Rules and Regulations, the City's Motion for Summary Judgment is GRANTED.

Chief Stan Sharp's decision not to promote the Grievant to Assistant Fire Chief in August 2013 did not violate Knoxville [CSMB] Rules and Regulations; nor, did his discretionary reliance on his promotional formula violate or require [CSMB] approval. The consideration of rank beyond the Eligibility Register is not required by the [CSMB] Rules and Regulations; and, promotion from the Eligibility Register is at the discretion of the Department Head. The employment grievance of Mr. Russell appealing his lack of promotion together with his Motion for Summary Judgment are DENIED.

(Capitalization in original.)

Russell appealed this decision to the trial court, which affirmed. Russell timely filed a notice of appeal to this Court.

## II.

Russell raises the following issues, as quoted from his brief:

1. Whether the Chancellor erred by affirming the hearing officer's holding that the Chief of the City of Knoxville Fire Department did not violate Civil Service Merit Board rules and regulations by not obtaining the approval of the Civil Service Merit Board for the formula he used for promotions?

2. Whether the Chancellor erred by affirming the hearing officer's holding that the Chief . . . did not violate Civil Service Merit Board Rules and Regulations by not considering Robert Russell's ranking on the eligibility register as a factor for promotion?

3. Whether the Chancellor erred by holding that the depositions conducted in [Russell's] grievance were irrelevant and inadmissible?

8

III.

"Judicial review of decisions by local government civil service boards that affect the employment of civil service employees is governed by the Uniform Administrative Procedures Act [UAPA]. Tenn. Code Ann. § 27–9–114(a)(1)." *Clarke v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2011-02607-COA-R3-CV, 2012 WL 6634344, at *6 (Tenn. Ct. App. M.S., filed Dec. 18, 2012); *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 263 (Tenn. 2009). The UAPA, at Tenn. Code Ann. § 4-5-322 (2015), provides the following standard of review:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322(h)-(i). The scope of review prescribed above is the same for trial and appellate courts. *Davis*, 278 S.W.3d at 264; *City of Memphis v. Civ. Serv. Comm'n of City of Memphis*, 216 S.W.3d 311, 316 (Tenn. 2007).

Russell styled his initial pleading in the trial court as a "writ of certiorari" and states in his brief that the standard of review is the one applicable to a petition for a common law writ of certiorari.[1] Contrary to Russell's argument, the Supreme Court has made it perfectly clear that the applicable standard of review in cases such as this one is the UAPA standard. *Davis*, 278 S.W.3d at 262-63; *City of Memphis*, 216 S.W.3d at 315-16. Regarding the UAPA standard, the High Court has observed as follows:

> the Court of Appeals [has] confirmed the limited nature of review under the Uniform Administrative Procedures Act. That court observed that only those agency decisions not supported by substantial and material evidence qualified as arbitrary and capricious but determined that even those decisions with adequate evidentiary support might still be arbitrary and capricious if caused by a clear error in judgment. Our Court of Appeals warned against a mechanical application of the standard of review under subsections (4) or (5):
>
> > In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the

---

[1] *See* ***Heyne v. Metro. Nashville Bd. of Pub. Ed.***, 380 S.W.3d 715, 728 (Tenn. 2012), in which the Supreme Court noted that "[a] common-law writ of certiorari is an extraordinary judicial remedy . . . [t]he scope of the judicial review available through a common-law writ is quite limited." The High Court further stated:

> The judicial review available under a common-law writ of certiorari is limited to determining whether the entity whose decision is being reviewed (1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support its decision.

*Heyne*, 380 S.W.3d at 729.

facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

Likewise, a reviewing court should not apply Tenn. Code Ann. § 4–25–322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." . . . The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

By virtue of these guidelines, our review is confined to whether the decision of the Commission qualifies as either arbitrary or capricious or, in the alternative, has insufficient support in the evidence.

*City of Memphis*, 216 S.W.3d at 316-17 (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)).

IV.

As already noted, Russell and the City of Knoxville both moved for summary judgment. Neither side argues that there is a genuine issue of material fact. The issues presented revolve around the construction of the rules and regulations of the CSMB. "When [an] employee is governed by a civil service system, the civil service system governs all aspects of employment, including terms of employment, promotion, discipline and termination." *Stamson v. Lillard*, 316 S.W.3d 611, 615 (Tenn. Ct. App. 2009). In *Morristown Firefighters Ass'n v. City of Morristown*, No. E2000-01942-COA-R3-CV, 2001 WL 274114, at *4 (Tenn. Ct. App. E.S., filed Mar. 20, 2001), we stated as follows regarding the applicable rules of construction:

This appeal involves the interpretation of the Civil Service Act and the Civil Service Commission Rules. Our Supreme Court in *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802-803 (Tenn. 2000), summarized our role when the issue involves statutory construction:

11

> "Construction of a statute is a question of law which we review *de novo* with no presumption of correctness." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998). . . . A basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. *Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). In determining legislative intent and purpose, a court must not "unduly restrict[ ] or expand[ ] a statute's coverage beyond its intended scope." *Worely v. Weigels, Inc*., 919 S.W.2d 589, 593 (Tenn. 1995). . . . Rather, a court ascertains a statute's purpose from the plain and ordinary meaning of its language, *see* *Westland West Community Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn. 1997), "without forced or subtle construction that would limit or extend the meaning of the language." *Carson Creek Vacation Resorts, Inc*., 865 S.W.2d at 2.

*Morristown Firefighters Ass'n*, 2001 WL 274114, at *4.

Chief Sharp does not dispute that he did not factor in Russell's ranking on the eligibility roster in making his promotion decisions, nor that he did not obtain the Board's approval of the formula used in his decision-making process. Before the CSMB hearing officer, the parties stipulated the issues to be determined: whether Chief Sharp violated the applicable rules and regulations by (1) "not considering Robert Russell's ranking on the Eligibility Register as a factor in his decision-making process as to whom to promote to Assistant Chief"; and (2) "not obtaining the approval of the [CSMB] for the 'formula' he used during his decision-making process for the 2013 Assistant Chief promotions." The question is whether these *undisputed* actions run afoul of the CSMB rules. The hearing officer and the trial court correctly observed that nothing in the evidence proffered by Russell, including the deposition testimony of Chief Sharp and his assistant chiefs, and Russell's resume, had any bearing or relevance to the issues as stipulated by the parties. Under these circumstances, we agree with the trial court's ruling affirming the hearing officer's decision to exclude the deposition testimony proffered by Russell and his resume. That material is simply not relevant to the issues stipulated by the parties.

The pertinent CSMB rules and regulations provide as follows:

**SECTION 1001. ESTABLISHMENT AND MAINTENANCE OF ELIGIBILITY REGISTER**

An eligibility register shall be established by the Board for each classification after each examination given for the classification. . . .

\*     \*     \*

**SECTION 1003. PLACEMENT ON ELIGIBILITY REGISTER**

After each examination for a particular classification, a new eligibility register shall be established for that classification placing the names of all persons eligible in the order of the grade made on the selection procedure. However, *because selection matters are discretionary in nature, successful test results and the meeting of all eligibility requirements do not in any way guarantee the selection of an applicant. "Eligibility for selection" and "actual selection" are separate and distinct matters.*

\*     \*     \*

**SECTION 1501. REQUEST FOR APPLICATIONS TO BE FORWARDED**

Whenever a vacancy in the classified service is to be filled, the Department Head shall submit a requisition to the Finance Department. [ ] Upon receipt by the Civil Service Department of a properly executed requisition, the classification shall be posted . . . The referral of applications shall not be made until the posting period has expired, and the applicants have had the opportunity to be processed *through the selection procedure.*

\*     \*     \*

13

**SECTION 1503.  JUSTIFICATION FOR SELECTION**

All applicants ranking higher on the referral than the applicant selected must be interviewed by the hiring authority.  *Because hiring decisions are at the discretion of the Department Head, rank order on the referral does not in any way guarantee that an individual will be hired.  Ranking on the referral only means that all individuals above the individual selected are guaranteed an interview, but not that such individuals have any preference in the selection process.*  If there are any applicants above the applicant selected, detailed justifications for selection of the applicant selected must be given[.]

\* \* \*

**SECTION 2101.  PROMOTIONS AND OPPORTUNITIES**

It is the policy of the City, in accordance with the Affirmative Action Program, to provide promotional opportunities, whenever possible, to qualified employees. . . .

**SECTION 2102.  PROMOTION POLICY**

In accordance with Section 1005 of the Charter, *promotion shall be based on "merit" to be ascertained so far as practical by competitive evaluation, as set forth in the Board Rules and Regulations.*  . . .  Furthermore, service alone in a position is not sufficient to achieve promotion to that position. . . .

**Section 2102.1.  Consideration of Promotional Applicants**

Vacancies, in positions above the lowest rank in any classification in the civil service, shall be filled, as far as possible, by the promotion of employees with civil service status.  With a view toward the selection of the best available applicant for each position, recruitment may also be made

14

from outside of City employees. When the eligibility register is prepared for referral to the department, said register shall be expanded if and as necessary to include the five highest scorers on the civil service examination. If expanded to include entry-level applicants, the hiring authority must still interview and give consideration to those with promotional preference before interviewing and considering the entry-level applicants.

\*    \*    \*

**Section 2102.3. Selection Procedure**

The Executive Secretary/Director in consultation with the Department Head, subject to the approval of the Board, shall determine the method of selection, and shall use one or more of the selection procedures and the certification process when filling a vacancy by promotion as described in these rules.

(Emphasis added; bold font, underlining, and capitalization in original.)

Construing the CSMB rules by examining their plain language and ordinary meaning, and reading them in context, they support the hearing officer's determination that a candidate for promotion on the eligibility roster is entitled only to an interview and consideration for the job, not a preference due to ranking on the eligibility roster. Rule 1503 plainly notifies candidates that their "[r]anking on the referral only means that all individuals above the individual selected are guaranteed an interview, but not that such individuals have any preference in the selection process." Rule 1503 further provides that "[b]ecause hiring decisions are at the discretion of the Department Head," in this case Chief Sharp, "rank order on the referral does not in any way guarantee that an individual will be hired." In fact, the rules specifically anticipate that applicants ranked lower on the eligibility roster may be promoted, providing that "[i]f there are any applicants above the applicant selected, detailed justifications for selection of the applicant selected must be given." Chief Sharp outlined in detail the procedure he used. He provided the required detailed justifications in this case.

The CSMB hearing officer also correctly determined that the "selection procedure" referred to in Rule 2102.3 applies to the procedure used in selecting candidates who are qualified to go on the eligibility roster. Rule 1003 provides that " '[e]ligibility for selection' and 'actual selection' are separate and distinct matters." Rule 1501 states that "[t]he referral of applications [*i.e.*, the eligibility roster] shall not be

made until the posting period has expired, *and the applicants have had the opportunity to be processed through the selection procedure*." (Emphasis added.) The reasoning of the hearing officer's order, quoted at length above, is sound.

Chief Sharp afforded Russell the process and consideration due under the CSMB rules. He interviewed Russell along with the others on the eligibility roster. He made his decision, exercising the discretion that the CSMB rules expressly afford him, by considering the recommendations of his assistant chiefs, the job interviews, his own personal knowledge of the candidates, their personnel files, disciplinary records, and resumes. There is no indication that Chief Sharp treated Russell any differently from the other candidates. There is also no proof suggesting that his promotion decisions were based on anything other than the "merit" of the respective candidates. Chief Sharp's actions were in accordance with the rules and were not taken arbitrarily or capriciously. The record before us does not reflect an abuse by Chief Sharp of the discretion granted him by the rules of the CSMB.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Robert George Russell, Jr. The case is remanded to the trial court for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE